Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com

Matthew F. Schwartz * *Pro Hac Vice Pending*
Brian S. Levenson * *Pro Hac Vice Pending*
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1006
New York, New York 10001
Phone: (212) 714-1200
Fax: (212) 714-1264
E-mail: mschwartz@splaw.us
E-mail: blevenson@splaw.us

Oren S. Giskan * *Pro Hac Vice Pending*
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Phone: (212) 847-8315
E-mail: ogiskan@gslawny.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SA MUSIC, LLC, WILLIAM KOLBERT, AS TRUSTEE OF THE HAROLD ARLEN TRUST, RAY HENDERSON MUSIC CO., INC., FOUR JAYS MUSIC COMPANY, and JULIA RIVA, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE, LLC, GENEPOOL DISTRIBUTION LTD., and IDEAL MUSIC LIMITED, <br><br> Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

**Basis for Jurisdiction**

1.     The Court has jurisdiction over the subject matter of this action against all Defendants pursuant to 28 U.S.C. § 1338(a) because this is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*

**Introduction**

2.     Plaintiffs are the legal and/or beneficial copyright owners of musical works authored by Harold Arlen, Ray Henderson, and Harry Warren, three of the premier composers of American music.

3.     Harold Arlen wrote or co-wrote some of the most popular modern songs, including *Over the Rainbow* from The Wizard of Oz and many other seminal works in the American songbook, including *I've Got the World on a String*, *Stormy Weather*, *The Devil and the Deep Blue Sea*, *Come Rain or Come Shine*, *Get Happy*, *Ill Wind* and *It's Only A Paper Moon*.

4.     Ray Henderson wrote or co-wrote some of the most popular modern songs, including many seminal works in the American songbook, including *Bye Bye Blackbird, Has Anybody Seen My Girl? (a/k/a "Five Foot Two, Eyes of Blue"), I'm Sitting on Top of the World, Life Is Just a Bowl of Cherries, Varsity Drag, The Best Things in Life Are Free, Button Up Your Overcoat* and *Animal Crackers in My Soup*.

5.     Harry Warren wrote over 800 songs, including *At Last, Chattanooga Choo Choo, I Only Have Eyes for You, You Must Have Been a Beautiful Baby, Jeepers Creepers, The Gold Diggers' Song (We're in the Money), Lullaby of Broadway, You'll Never Know, On the Atchison, Topeka and the Santa Fe, That's Amore, Nagasaki, There Will Never Be Another You,* and *The More I See You*.

6.     The Composition Chart annexed as Exhibit A provides a list of Plaintiffs' copyrighted compositions at issue in this case (the "Subject Compositions").

7.     The works of Arlen, Henderson, and Warren have been recorded by the most prominent jazz and popular artists of all time, including Art Tatum, Benny

Goodman, Billie Holliday, Cab Calloway, Ella Fitzgerald, Ethel Waters, Frank Sinatra, Judy Garland, Lena Horne, Louis Armstrong, Miles Davis, Ray Charles, Sarah Vaughan, and Tony Bennett to name only a few. These monumental works of art are, quite literally, national treasures. These and other recordings of Plaintiffs' copyrighted musical works have been pirated by the Defendants in this case.

8.   Defendants are all players in the digital music business that participate in, and jointly profit from, making digital phonorecord deliveries (*i.e.*, downloads) of pirated recordings of the Subject Compositions.

9.   Digital phonorecord deliveries of musical recordings constitute a reproduction and distribution of the musical work embodied in the digital recording and require a license from the copyright owner of the musical composition, sometimes referred to as a "mechanical license."

10.   Defendants have failed to obtain any license that would authorize them to reproduce, distribute, or sell the recordings of the Subject Compositions identified in the Infringement Charts annexed as Exhibits B-D and as a result, Defendants have infringed Plaintiffs' exclusive rights of reproduction and distribution of the Subject Compositions, under 17 U.S.C. §§ 106(1) and 106(3).

11.   Further, the activity of making digital phonorecord deliveries of pirated recordings of the Subject Compositions does not qualify for a compulsory license under Section 115 of the Copyright Act.

12.   A list of the pirated recordings of the Subject Compositions that Defendants have reproduced and distributed without authorization, including by making digital phonorecord deliveries, thus far identified, is set forth in the Infringement Charts annexed as Exhibits B-D.

13.   All the recordings identified on Exhibits B-D are pirated. Plaintiffs have thus far identified over 270 pirated recordings of the Subject Compositions that have been separately reproduced and distributed by Defendants in the Google Play store as set forth in the Infringement Charts annexed as Exhibits B-D.

1

### Defendants' Piracy is Massive and Flagrant

2  14.  The scope and flagrant nature of Defendants' piracy cannot be
3  understated. It is obvious that the recordings listed in Exhibits B-D are pirated by
4  virtue of the scope of the Ideal Music catalog, the replication of the original album
5  artwork, and the distribution of legitimate versions of the recordings by the rightful
6  record label owners in the Google Play store.

7  15.  Ideal Music has no web presence and no listing on Discogs.com, yet it
8  sold recordings by virtually every well-known recording artist from the 1930-1970.

9  16.  In many cases, Defendants pirated two entire albums of previously
10  released material, combined them with the original album artwork, and made them
11  available for sale in the Google Play store as "2 classic albums". For example, in
12  1953, Clef Records released a recording of *Stormy Weather* by Billy Holiday on the
13  album <u>An Evening with Billie Holiday</u>:

14
15
16    
17
18
19

20  17.  UMG Recordings (now Clef's parent label) continues to sell the
21  recording and the album, including on the Google Play store:

22
23
24  
25
26
27

28

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

18.     Defendants, however, pirated the entire album (including the artwork), combined it with another Billie Holiday album originally released by Clef, <u>Billie Holiday Sings</u>, and offered both albums for sale on the Google Play store for significantly less than the legitimate release:



19.     This is not the only instance in which Defendants have combined previously released albums in this manner. In every case, they have bootlegged the artwork as well as the recordings and have offered the combined pirated albums as "2 classic albums" at a steep discount to regularly priced  digital albums in the Google Play stores. The following are some additional examples:



The Drifters' Greatest Hits
(Atlantic – 1960)

Save the Last Dance for Me
(Atlantic – 1962)



Anita Sings the Most
(Verve – 1957)

An Evening with Anita O'Day
(Verve – 1957)



Tony Bennett Sings For Two
(Columbia - 1961)

Alone Together
(Columbia - 1960)

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

20.     In addition, Defendants created unauthorized compilations of a particular recording artist's greatest works and made them available for sale as albums called The Great American Songbook. For example, Defendants distributed the following compilations of the works of Judy Garland, Billie Holiday, Johnny Mathis, and Miles Davis in the Google Play store using cookie-cutter album art:



21.     Defendants did the same for a series of albums they called "Big Band Legends" and distributed the following unauthorized compilations of the works of Cab Calloway, Gene Krupa, Count Basie, and Benny Goodman:



22.     In addition, Defendants have bootlegged albums comprised solely of works by particular composers, including Arlen, Henderson and Warren. For example, in 1961, Columbia Records released Tony Bennett – Sings A String Of Harold Arlen, an album comprised exclusively of works by Harold Arlen. Defendants combined the recordings and artwork from this album with another Columbia-Bennett album, To My Wonderful One, and made all the tracks available for sale on Google Play under the Ideal Music imprint.

23.     What's more, they have offered the combined albums for sale in the Google Play stores for $4.99 ($.99 per track), a steep discount when compared with the legitimate releases that Columbia is still offering in Google's store for $9.49 per album ($1.29 per track) as evidenced by the following screenshots:



*Ideal Music*



*Columbia Records*



*Columbia Records*

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

24.    Defendants have infringed the Ray Henderson and Harry Warren catalogs of works on a wholesale basis as well. Defendants have created unauthorized compilations of these composer's works and offered them for sale on the Google Play stores:





25.    All of this should have made it obvious that Ideal Music is a huge music piracy operation. Genepool and Google had actual knowledge of, and/or willfully chose to ignore, the evidence of piracy and participated in the infringement on a massive scale.

26.    To put this case in context, in 2007, Jammie Thomas-Rasset, a single mother of four in Brainerd, Minnesota, was found liable, after three separate jury trials, for copyright infringement for using file sharing software that enabled the unauthorized downloading and distribution of 24 recordings by the Goo Goo Dolls and Def Leppard, among others. The juries awarded statutory damages in all three

trials of up to $80,000 per infringement. The Eighth Circuit Court of Appeals ultimately affirmed statutory damages in the amount of $9,250 for each infringed recording, for a total award of $222,000. Ms. Thomas-Rassett declared bankruptcy as she had "no other option."

27.    In 2009, Joel Tenenbaum, a Massachusetts college student, who also used file-sharing software that permitted others to download 30 recordings by Limp Bizkit and Blink-182, was found liable and the jury awarded statutory damages of $22,500 per recording, for a judgment that totaled $675,000 forcing Mr. Tenenbaum to file for Chapter 7 bankruptcy.

28.    Unlike Ms. Thomas-Rassett and Mr. Tenenbaum who were not alleged to have sold their infringing recordings or profited from their conduct, Defendants in this case have engaged in massive music piracy operation for the purpose of generating profits from their sales of pirated recordings and by other means.

29.    The copyright infringement operation detailed in this Complaint is only the latest in a long line of piracy schemes that have plagued composers, publishers, and record labels since the inception of the music industry over 100 years ago, when the perforated rolls used by player pianos to perform musical works were pirated. See *Aeolian Co. v. Royal Music Co.*, 196 F. 926 (W.D.N.Y. 1912).

30.    As the technology employed by the music industry to reproduce musical works advanced, bootlegging efforts by music pirates kept pace. In the 1960s and 1970s, organized criminal enterprises engaged in record and tape piracy operations on a scale that is dwarfed by the infringing conduct explained herein. Like the Defendants in this case, the "tape pirates" and "record pirates" of years past unlawfully duplicated popular pre-existing recordings, and then claimed their liability was limited by the compulsory license provision of the 1909 Copyright Act, § 1(e).

31.    The landmark case *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972) settled the issue as to whether tape pirates could limit their liability for piracy under the compulsory license provision of the 1909 Copyright Act. In *Duchess*, the

defendant tape pirate engaged in the same conduct identified in this Complaint, and claimed her conduct was lawful because the compulsory license provision of the Copyright Act authorized the reproduction and distribution of the musical works embodied on the recordings she pirated. The Ninth Circuit rejected the argument, stating, "She may not continue her piracy under the flag of compulsory licensing." The *Duchess* court concluded that the tape pirates' activity was ineligible for a compulsory license and that reproduction of a musical composition on a pirated recording infringed the copyright in the composition, even when a compulsory license was claimed.[1]

32.     The holding in *Duchess* was codified when the Copyright Act was revised in 1976. The statutory bar against compulsory licensing of pirated recordings continues in the recent amendments to Section 115 of the Copyright Act, which provides that reproduction and distribution of pirated sound recordings is not a covered activity under Section 115 and is ineligible for a compulsory license.

33.     Defendants are nothing more than modern tape pirates and their conduct constitutes willful copyright infringement of the Subject Compositions in violation of the United States Copyright Act [17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq.*] (the "Copyright Act").

## The Parties

### *SA Music, LLC*

34.     Plaintiff SA Music, LLC is a Nevada limited liability company and Sam Arlen is the sole member of the company.

---

[1] The criminal conduct of "tape pirates" became a priority of the Attorney General of the United States, Edward H. Levi, in 1975 when the Justice Department determined that decisions reached by four Circuit Courts of Appeals, including the Ninth Circuit in *Duchess*, rendered tape pirates criminally liable even where the statutory royalty was tendered. See *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wisc. 1975). Criminal copyright infringement sentences continue to this day. See *Matter of Zaragoza-Vaquero*, 26 I&N Dec. 814 (BIA 2016)(defendant sentenced to 33 months in prison and ordered to be removed from the United States for selling bootleg copies of music CDs at a Florida flea market, as a crime involving moral turpitude).

### *The Harold Arlen Trust*

35.    Plaintiff William Kolbert is the Trustee of the Harold Arlen Trust (the "Harold Arlen Trust"), a trust created by Harold Arlen in his will. Sam Arlen is a beneficiary of the trust.

### *Ray Henderson Music Co. Inc.*

36.    Plaintiff Ray Henderson Music Co. Inc. is a Delaware corporation with a principal place of business in Maryland.

### *Four Jays Music Company & Julia Riva*

37.    Plaintiff Four Jays Music Company is a California corporation with a principal place of business at 421 E. 6th St. in Los Angeles, California.

38.    Plaintiff Julia Riva is Harry Warren's granddaughter and the President of Four Jays Music Company. Julia Riva is a resident of Los Angeles, California.

### *Google*

39.    Defendant Google LLC ("Google") is a limited liability company organized under the laws of the State of Delaware with a place of business at 1600 Amphitheatre Parkway, Mountain View, California.

40.    Google has owned and operated a digital music store under various names since 2011, including "Google Music" at launch, and currently, "Google Play", all selling permanent downloads. Google Play currently has a catalog of over 40 million tracks for sale as permanent downloads in the U.S.

41.    Google specifically selected and contracted with Ingrooves, Genepool, and/or Ideal Music to provide the Ideal Music digital music catalog to be sold in its Google Play store on negotiated financial terms.

42.    Google received all of the recordings of the Subject Compositions identified on Exhibits B-D from Ingrooves, Genepool, and/or Ideal Music. Google then reproduced, distributed and sold these pirated recordings of the Subject Compositions in Google Play, without any licenses, as permanent downloads among other types of digital phonorecord deliveries identified herein.

1

### *Genepool*

2    43.    Upon information and belief, Defendant Genepool Distribution Ltd.

3  ("Genepool") is a business entity organized under the laws of the United Kingdom

4  with a place of business at 8 Bovisand Court, Bovisand, Plymouth, Devon, PL9 0AD,

5  United Kingdom.

6    44.    Genepool engages in the distribution of digital music to the Google Play

7  store and has delivered thousands of recordings to Google for sale throughout the U.S.

8    45.    Genepool specifically selected and contracted with Ideal Music to

9  provide the Ideal Music  digital music catalog to be sold in the Google Play store on

10  negotiated financial terms.

11    46.    Genepool (and or its distributor(s)) unlawfully reproduced and

12  distributed the pirated recordings of the Subject Compositions to Google at the

13  direction of Ideal Music and unlawfully authorized its distributor(s) and Google to

14  make digital phonorecord deliveries in the Google Play store, as specifically set forth

15  in Exhibits B-D.

16

### *Ideal Music*

17    47.    Upon information and belief, Defendant Ideal Music Limited ("Ideal

18  Music") is a business entity organized under the laws of the United Kingdom with a

19  place of business at 10 Wades Grove, London, N21 1BH.

20    48.    Ideal Music, without any authority, duplicated pre-existing recordings

21  embodying the Subject Compositions, distributed them to Genepool (and/or other

22  distributors) and Google,  without any license, unlawfully authorized distribution and

23  delivery of the pirated recordings to Google for sale in its online music store, and

24  unlawfully authorized Genepool and Google to make digital phonorecord deliveries

25  in the Google Play store as specifically set forth in the annexed Exhibits B-D.

26    49.    Upon information and belief, Ideal Music is simply duplicating

27  recordings of the Subject Compositions made by others without permission and

28

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

authorizing Genepool (and or other distributors), and Google to sell reproductions of the pirated copies for profit in the Google Play store.

## Jurisdiction, Venue and Joinder

50.     This Court has personal jurisdiction over Defendants because they have a principal place of business in this Judicial District and/or purposefully availed or directed their infringing activities in this Judicial District. Google has its principal offices in this district. Defendants Genepool and Ideal Music are business entities located in the United Kingdom and have purposefully availed themselves and/or directed their infringing activity at this Judicial District.

51.     Further, Plaintiffs' copyright infringement claims arise out of (a) the reproduction and distribution of pirated recordings of the Subject Compositions listed in Exhibits B-D, occurring in Northern District of California, directly by Defendants and/or at their purposeful direction and availment, including the infringing distribution, delivery and reproduction of pirated recordings embodying Plaintiffs' compositions to Google in Northern District of California; (b) infringing distribution, delivery and reproduction of pirated recordings embodying Plaintiffs' compositions to Google in Northern District of California; (c) the infringing sale of pirated recordings of Subject Compositions to Northern District of California residents; and/or (d) transactions consummated within Northern District of California concerning reproduction, distribution and delivery of the pirated recordings of the Subject Compositions.

52.     Ideal Music intentionally directed its distributor Genepool to distribute the pirated recordings of the Subject Compositions identified in Exhibits B-D to Google for sale in its online music store and unlawfully authorized Google to reproduce and distribute pirated recordings of the Subject Compositions in its Google Play music store.

53.     Ideal and Genepool intentionally distributed and delivered the pirated recordings of the Subject Compositions identified in Exhibits B-D to Google, and

unlawfully authorized Google to reproduce these pirated recordings of the Subject Compositions in their digital music stores and to sell permanent downloads to California consumers. Genepool and Ideal Music received royalties and royalty statements for all of Google's sales of permanent downloads of the pirated recordings of the Subject Compositions in its Google Play digital music store.

54.     Google reproduced the pirated recordings of the Subject Compositions and made available, distributed, and sold the pirated recordings of the Subject Compositions to Californians from the Google Play store.

55.     Venue is proper in this District pursuant to 28 U.S.C §§ 1391(b), 1391(c) and 1400(a) because Google has its principal place of business in this district. In addition, Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in California and in this Judicial District.

56.     Joinder of Ideal Music, Genepool, and Google is proper under Fed. R. Civ. P. 20 because Defendants are jointly and severally liable as members of a distinct distribution chain for the acts of copyright infringement identified herein.

**Harold Arlen**

57.     Harold Arlen (1905–1986) was a master composer and a highly regarded contributor to the Great American Songbook. The son of a synagogue cantor, Arlen was born in Buffalo, New York and emerged as one of the greatest American composers and songwriters, writing extraordinarily complex melodies and harmonies that remained accessible to a broad popular audience.

58.     Early in his career, Arlen wrote songs for musicals, including the entire scores for Broadway shows such as Cotton Club Parade, Life Begins at 8:40, Bloomer Girl, St. Louis Woman, Jamaica and Saratoga, among others.

59.     Arlen was also active in Hollywood and composed the music for some of the greatest film musicals of all time, most notably all the music in the 1939 motion

picture classic "The Wizard of Oz," including *Ding, Dong! The Witch Is Dead*, *We're Off To See The Wizard*, and *Over The Rainbow*.

60.     *Over The Rainbow,* performed by Judy Garland in the film, won the Academy Award for Best Original Song. The song is one of the most enduring standards of the 20th century and was voted number one on the "Songs of the Century" list compiled by the Recording Industry Association of America and the National Endowment for the Arts. The American Film Institute also ranked *Over The Rainbow* the greatest movie song of all time.

61.     Arlen successfully collaborated with the greatest of the Tin Pan Alley lyricists, including E.Y. "Yip" Harburg, Ira Gershwin, Johnny Mercer, Leo Robin and Ted Koehler.

62.     Arlen's partnership with Harburg extended over many decades. With Billy Rose, they wrote *It's Only A Paper Moon* in 1933. They followed up with a successful revue, Life Begins at 8:40, which included lyric collaborations with his old friend, Ira Gershwin, including *Fun to Be Fooled*, *You're A Builder Upper*, and *Let's Take A Walk Around The Block*.

63.     Arlen was inducted into the Songwriters Hall of Fame in 1971 and was honored with its highest accolade, the Johnny Mercer Award, in 1982.

64.     In 1996, Arlen was honored and memorialized by the United States Postal Service with his own stamp:



**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

## SA Music LLC and the Harold Arlen Trust

65.     Harold Arlen's son, Sam Arlen, acquired the U.S. copyrights in the Subject Compositions between 1989 and 2013, by termination notices that he, as sole statutory heir under Section 304 of the Copyright Act of 1976, served and filed with Copyright Office.

66.     In 2018, Sam Arlen assigned the U.S. copyrights in the Subject Compositions, as set forth in the Composition Chart annexed as Exhibit A, along with all accrued causes of action, to his company, SA Music, LLC. SA Music, LLC is the legal and/or beneficial owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

67.     Plaintiff Harold Arlen Trust acquired the U.S. copyrights identified in the Composition Chart annexed as Exhibit A by operation of will and through termination notices served and filed by Harold Arlen during his lifetime with the U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

68.     Plaintiff Harold Arlen Trust is the legal owner of certain of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

## Ray Henderson

69.     Ray Henderson (1896-1970) was born in Buffalo, New York and studied piano and composition at the Chicago Conservatory where he cultivated a melodic style that helped him write enduring American standards, such as *Life Is Just A Bowl of Cherries*, *Bye Bye Blackbird*, and *Five Foot Two Eyes Of Blue*.

70.     Henderson was part of the most successful songwriting team of the late 1920s and 1930s, Henderson, Brown and DeSylva. The threesome created several memorable hits from the era including *It All Depends On You*, *Broken Hearted*, and *If I Had A Talking Picture of You.*

71.     Henderson contributed to several Broadway shows throughout his career including Manhattan Mary, George White's Scandals, Good News, Hold Everything,

Three Cheers, Follow Through, Flying High, Hot-Cha, Strike Me Pink, Ziegfeld Follies of 1943 and Say When. In 1956, Henderson's songwriting life was the subject of a film called "The Best Things In Life Are Free" starring Gordon MacRae, Dan Dailey and Ernest Borgnine as the real-life songwriting team of Buddy DeSylva, Lew Brown and Ray Henderson.



72.    Ray Henderson was among those selected for the inaugural induction into the Songwriters Hall of Fame in 1970.

**Ray Henderson Music Co. Inc.**

73.    Ray Henderson Music Co. Inc. is a Delaware corporation formed by Ray Henderson's children.  Ray Henderson Music Co. Inc. acquired the copyrights in the respective Subject Compositions by assignment from his children who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

74.    Plaintiff Ray Henderson Music Co. Inc. is the legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all causes of action.

**Harry Warren**

75.    Harry Warren (1893-1981) has perhaps contributed more to the great American songbook than any other songwriter in history. Warren was born to Italian

immigrant parents in Brooklyn, New York. After serving in the US Navy in World War I, Warren began writing songs.

76.    In the years 1931 to 1945, Warren wrote more hit songs than Irving Berlin. He was nominated for the Academy Award for Best Song eleven times (more than Berlin, George Gershwin, Cole Porter or Richard Rodgers) and won three Oscars for composing *Lullaby of Broadway*, *You'll Never Know,* and *On the Atchison, Topeka and the Santa Fe*.



77.    Warren wrote over 800 songs including *Chattanooga Choo Choo,* the first song to receive a gold record, presented by RCA Victor in 1942, for sales of 1.2 million copies. Over the course of his career, Warren wrote 81 top 10 hits, including timeless classics such as *At Last*, *I Only Have Eyes For You*, *That's Amore*, *You Must Have Been A Beautiful Baby*, *Jeepers Creepers*, and *The Gold Diggers' Song (We're in the Money)*.

78.    Warren was one of America's most prolific film composers, and his songs have been featured in over 300 films. Harry Warren was inducted into the Songwriters Hall of Fame in 1971.

### Four Jays Music Company & Julia Riva

79.    In 1955 Harry Warren formed the Four Jays Music Company, a California corporation, to own the copyrights in his musical works.

80.    Four Jays Music Company acquired the copyrights in the respective Subject Compositions by assignment from Harry Warren and third party music

publishers, as well as by assignment by Harry Warren's wife, daughter, and grandchildren, who acquired the copyrights by termination notices timely served and filed with U.S. Copyright Office under Section 304 of the Copyright Act of 1976.

81. Plaintiff Four Jays Music Company is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action.

82. Julia Riva is a legal owner of the U.S. copyright in certain of the Subject Compositions as identified in Exhibit A, along with all accrued causes of action, as a result of termination notices filed and served on or after January 1, 1997.

## The Subject Compositions

83. Plaintiffs are the owners of the musical compositions listed in the Composition Chart annexed as Exhibit A (collectively, the "Subject Compositions") that are the subject of this action.

84. The copyrights for all the Subject Compositions have been registered and renewed with the U.S. Copyright Office, and each Subject Composition is the subject of a valid U.S. copyright. The Composition Chart annexed as Exhibit A identifies the copyright registration numbers for each of the Subject Compositions.

85. Plaintiffs are the owners of a share in each of the Subject Compositions in the percentages listed on Exhibit A.

86. As discussed more fully below, the Defendants have infringed, and are continuing to infringe, the copyright in each of the Subject Compositions by willfully reproducing and distributing them without a license.

## Background

87. Before digital music distribution, recorded music was physically distributed through brick-and-mortar stores that were confined by the limitations of shelf space. Recording artists signed exclusive recording contracts with record labels in order to have their records pressed and distributed in national record stores.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

88.    It is hard to imagine that a person walking into Tower Records, off the street, with arms full of CDs and vinyl records and claiming to be the record label for Frank Sinatra, Louis Armstrong and Ella Fitzgerald, could succeed in having that store sell their copies directly next to the same albums released by legendary record labels, Capitol, RCA and Columbia, and at a lower price.

89.    Yet, this exact practice occurs every day in the digital music business, where there is unlimited digital shelf space (for example, there are more than 40 million recordings in the Google Play store) and a complete willingness by the digital music stores to seek popular and iconic recordings from any source, legitimate or not, provided they participate in sharing the proceeds.

90.    The iconic status of the pirated recordings of the Subject Compositions at issue in this case cannot be overstated. Any list of the most popular singers and musicians of any period between 1930 and 1970 would be replete with the artists who have recorded Plaintiffs' musical works, some of them multiple times.

91.    All the recordings on the Infringement Charts (Exhs. B-D) embodying the Subject Compositions are pirated copies, or "bootlegs." Defendants' digital phonorecord deliveries of these pirated copies were all made without authorization from the copyright owners of the sound recordings or those who originally "fixed" them as required by Section 115 (discussed below), and the copyright owners of the Subject Compositions.

92.    Defendants all generate illicit revenue for themselves when these and other pirated copies are sold or distributed. Plaintiffs have not authorized any reproduction or distribution of these pirate recordings of the Subject Compositions (or any identified on Exhibits B-D) and it is an infringement for which all the Defendants are jointly and severally liable.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

**The Pirated Recordings**

93.     All of the recordings identified in Exhibits B-D are pirated and all of the corresponding Subject Compositions are unlicensed. For all of the infringements identified in Exhibits B-D, Defendants have taken recordings of the Subject Compositions – in which they hold no rights – and reproduced and distributed pirated copies of them to the public, for profit, without authorization, and without obtaining a license to reproduce and distribute the Subject Composition embodied in each respective pirated recording.

94.     Virtually all of the recordings at issue in this case were originally made between 1930 and 1972. Because of the consolidation in the music industry, many of the record labels that originally released these recordings have been acquired or otherwise consolidated by the three remaining major labels, Sony, Universal, and Warner, and their catalogs were absorbed into the major labels' "back catalog." This consolidation occurred well before the first digital music stores started operating in the early 2000s.

95.     Since Ideal Music did not exist prior to 1999, and it did not originally "fix" any of the relevant recordings, the only way for it to acquire the rights to duplicate and distribute them would be to purchase or license rights in these recordings and the compositions they embody.

96.     Ideal Music, however, never acquired any license or authority from Plaintiffs. Further, Ideal Music never acquired permission or the rights to reproduce or distribute any of these back-catalog recordings from the major labels.

97.     Defendants all simply duplicated pirated records of the Subject Compositions without permission and sold the pirated copies for profit.

**Defendants Have Infringed the Subject Compositions**

98.     Section 115 of the Copyright Act expressly excludes Defendants' reproduction and distribution of pirated recordings of the Subject Compositions as a covered activity eligible for a compulsory license under Section 115 and Defendants

have failed to obtain any licenses for the Subject Compositions that authorize such activity.

99.     The Infringement Charts annexed as Exhibits B-D set forth each pirated recording of the Subject Compositions thus far identified by Plaintiffs that Defendants have reproduced, distributed, imported, and/or made available for sale as digital phonorecord deliveries in the Google online store without authorization.

100.   The various types of unauthorized reproductions, distributions, and/or digital phonorecord delivery configurations of each of the pirated recordings of the Subject Compositions made and/or authorized by Defendants are discussed briefly below.

### *Permanent Downloads*

101.   Permanent download means a digital transmission of a sound recording of a musical work in the form of a download, where such sound recording is accessible for listening without restriction as to the amount of time or number of times it may be accessed.

102.   Google has made available, reproduced, and distributed permanent downloads of the recordings of the Subject Compositions listed on Exhibits B-D to its customers.

103.   Google was unlawfully authorized and directed to do so by Ideal Music, Genepool, and/or their distributor(s).

104.   Reproducing or distributing permanent downloads of recordings of the Subject Compositions requires licenses from the copyright owners of the Subject Compositions and all of the Defendants failed to obtain such licenses for each entry on the Infringement Charts at Exhibits B-D.

105.   The reproduction and distribution of permanent downloads of recordings of the Subject Compositions by Google, and the authorization of this activity by Ideal Music, Genepool, and/or their distributor(s), infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

*Server Copies*

106.    Google has reproduced at least one copy of each recording of the Subject Compositions identified on Exhibits B-D on its servers for sale of permanent downloads in its online store as server copies.

107.    Google was unlawfully authorized to engage in this activity by Ideal Music, Genepool, and/or their distributor(s).

108.    Making server copies of any of the recordings embodying the Subject Compositions identified on Exhibits B-D requires a license from the copyright owners of the Subject Compositions.

109.     All Defendants failed to obtain such licenses for each of the recordings embodying the Subject Compositions identified on Exhibits B-D.

110.    Google's reproduction of server copies of pirated recordings of the Subject Compositions for sale of permanent downloads in its online store, and authorization of this activity by Ideal Music, Genepool, and/or its distributor(s), as well the distribution of the server copies of pirated recordings of Subject Composition to Google by Ideal Music, Genepool, and/or their distributor(s), infringes Plaintiffs' exclusive reproduction and distribution rights under 17 U.S.C. § 106(1) and (3).

*Making Available*

111.    Defendants have made and continue to make available, or authorize making available, permanent downloads of the recordings of the Subject Compositions identified on Exhibits B-D to the public by delivering, uploading and/or offering them as permanent downloads in Google's online store.

112.    Defendant Google's making available recordings of the Subject Compositions identified on Exhibits B-D for permanent downloads, and authorization of this activity, by Ideal Music, Genepool, and/or their distributor(s), requires a license from the copyright owners of the Subject Compositions

113.    Defendants failed to obtain such licenses for each recording of the Subject Compositions identified on Exhibits B-D and have thereby infringed

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

Plaintiffs' exclusive distribution rights under 17 U.S.C. § 106(3) as a "deemed distribution." *A&M Records v. Napster*, 239 F.3d 1004, 1014 (9th Cir. 2001); *Perfect 10, Inc. v. Google.com, Inc.*, 487 F.3d 701 718–19 (9th Cir. 2007).

### *Importation*

114.   Importation of phonorecords of a musical composition acquired outside the U.S. requires authorization of the owner of the copyright of the musical composition under Section 602 of the Copyright Act. Importation without the authority of the owner of the copyright in that composition is an infringement of the exclusive distribution rights under 17 U.S.C. § 106(3).

115.   Defendants have engaged in the unauthorized importation of phonorecords of the Subject Compositions, acquired outside the U.S., by digital phonorecord deliveries, or other means.

116.   Ideal Music and Genepool are located outside the United States. Defendants have engaged in the importation of phonorecords of each recording embodying the Subject Compositions listed on Exhibits B-D into the United States by digital phonorecord delivery, or other delivery of phonorecords.

117.   None of the Defendants obtained importation authorization from the U.S. copyright owners of the Subject Compositions.

118.   Defendants' respective importations of phonorecords embodying the Subject Compositions identified on Exhibits B-D infringe Plaintiffs' exclusive importation rights under 17 U.S.C. § 602 and distribution rights under 17 U.S.C. § 106(3).

**Willfulness**

119.   The infringing conduct of all of the Defendants is willful. Ideal Music knows that it does not have authority to reproduce, distribute or for importation of the recordings of the Subject Compositions listed on Exhibits B-D, or to authorize these actions by Genepool and Google. Ideal Music has pirated thousands of recordings and sold them in the United States through Google's online store.

120.   Similarly, Genepool did not perform any investigation or due diligence to confirm that Ideal Music had authorization to reproduce, distribute, make, or authorize the making of digital phonorecord deliveries, or the importation, of the recordings of the Subject Compositions identified on Exhibits B-D.

121.   In fact, Genepool and Google have had knowledge of the infringing conduct of Ideal Music but nevertheless continued to make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Ideal Music provided without any licenses, and/or were recklessly indifferent or willfully blind to their own infringing conduct.

122.   Further, Google had knowledge of their own infringing conduct and that of Ideal Music and Genepool but continued to work with them and make digital phonorecord deliveries and other reproductions and distributions of the pirated recordings of the Subject Compositions that Ideal Music, Genepool, and/or their distributor(s) provide and/or were recklessly indifferent or willfully blind to their own infringing conduct.

123.   Finally, Google has willfully failed to employ adequate human resources, screening mechanisms, or use of digital fingerprinting technology to detect unlawfully duplicated recordings in their stores that it routinely uses for other services.

124.   In addition to the recordings identified on Exhibits B-D, there are believed to be many other pirated recordings of the Subject Compositions that

Defendants have reproduced and distributed without authorization that Plaintiffs have not yet identified or that are no longer available on Google's online store.

125.   The infringement by Defendants of each Subject Composition on each pirated recording identified in the Infringement Chart at Exhibits B-D began as of the date of upload, receipt, delivery to and/or reproduction by Google of server copies of the pirated recordings of the Subject Compositions designated for reproduction and distribution by Ideal Music, Genepool, and/or their distributor(s) in Google's online store and continued through August 2019 in this case of Google when, upon information and belief, the Ideal Music catalog was deactivated from the Google Play store by Genepool and/or Ideal Music. The infringements identified in Exhibits B-D all occurred within three years prior to the filing this Complaint.

126.   By their conduct described above, Defendants have infringed and are continuing to infringe Plaintiffs' copyrights on a regular basis in violation of 17 U.S.C. §§ 101, 106, 115, 501, 602 *et seq*.

127.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to elect either an award of actual damages, including Defendants' profits, or statutory damages under 17 U.S.C. § 504(c).

128.   Defendants' infringement is and has been willful, intentional, purposeful and with willful disregard of the rights of Plaintiffs. Anything less than maximum statutory damage awards would encourage infringement, amount to a slap on the wrist, and reward Defendants for their willful infringement on a grand scale.

129.   Plaintiffs are also entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

130.   Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting Defendants from reproducing, distributing, importing and selling the pirated recordings of the Subject Compositions without license or authorization in violation of the Copyright Act.

### First Claim for Copyright Infringement by

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

**SA Music LLC and William Kolbert, as Trustee**
**of the Harold Arlen Trust Against All Defendants**

131.   Plaintiffs repeat each and every allegation of the Complaint.

132.   Plaintiffs  SA Music LLC and William Kolbert as Trustee of the Harold Harlen Trust claim that Defendants Google, Genepool, and Ideal Music have unlawfully reproduced, distributed, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit B by the methods identified herein, and/or have unlawfully directed or authorized this activity.

133.   Defendants have thereby willfully infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act.

**Second Claim for Copyright Infringement by**
**Ray Henderson Music Co., Inc. Against All Defendants**

134.   Plaintiffs repeat each and every allegation of the Complaint.

135.   Plaintiff Ray Henderson Music Co., Inc. claims that Defendants Google, Genepool, and Ideal Music have unlawfully reproduced, distributed, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit C by the methods identified herein, and/or have unlawfully directed or authorized this activity.

136.   Defendants have thereby willfully infringed Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act.

**Third Claim for Copyright Infringement by**
**Four Jays Music Company and Julia Riva Against All Defendants**

137.   Plaintiffs repeat each and every allegation of the Complaint.

138.   Plaintiffs Four Jays Music Company and Julia Riva claim that Defendants Google, Genepool, and Ideal Music have unlawfully reproduced, distributed, and imported unauthorized recordings embodying the Subject Compositions including, but not limited to, those identified in Exhibit D by the methods identified herein, and/or have unlawfully directed or authorized this activity.

139.   Defendants have thereby willfully infringed Plaintiff's copyrights in the Subject Compositions in violation of the Copyright Act.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants, jointly and severally, on each claim stated above, as follows:

1.   A declaration that Defendants have infringed Plaintiffs' copyrights in the Subject Compositions in violation of the Copyright Act;

2.   A declaration that each of Defendants' infringements was willful;

3.   At Plaintiffs' election, an award of Plaintiffs' actual damages, including Defendants' profits, or a separate award of statutory damages in amounts to be determined by the jury for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally;

4.   A permanent injunction barring the Defendants from continued infringement of Plaintiffs' copyrights in the Subject Compositions pursuant to 17 U.S.C. § 502; and

5.   Reasonable attorneys' fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By:     /s/   Allen Hyman
Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
E-mail: lawoffah@aol.com

Matthew F. Schwartz  (*Pro Hac Vice Pending*)
Brian S. Levenson  (*Pro Hac Vice Pending*)
SCHWARTZ, PONTERIO & LEVENSON, PLLC
134 West 29th Street, Suite 1006
New York, New York 10001
Phone: (212) 714-1200
E-mail: mschwartz@splaw.us
E-mail: blevenson@splaw.us

Oren S. Giskan  (*Pro Hac Vice Pending*)
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Phone: (212) 847-8315
E-mail: ogiskan@gslawny.com

*Attorneys for Plaintiffs*

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**

1

## JURY DEMAND

2        Pursuant to Fed. R. Civ. P. 38(b), Local Civil Rule 38, and otherwise, Plaintiffs

3  respectfully demand a trial by jury on all issues so triable.

4  Dated:      New York, New York

5                March 10, 2020

6                                Respectfully submitted,

7

8                 By:    /s/   Allen Hyman

                          Allen Hyman (California State Bar No. 73371)

9                        LAW OFFICES OF ALLEN HYMAN

                        10737 Riverside Drive

10                     North Hollywood, CA 91602

11                     Phone: (818) 763-6289

                        E-mail: lawoffah@aol.com

12

13                     Matthew F. Schwartz  (*Pro Hac Vice Pending*)

                        Brian S. Levenson  (*Pro Hac Vice Pending*)

14                   SCHWARTZ, PONTERIO & LEVENSON, PLLC

15                    134 West 29th Street, Suite 1006

                        New York, New York 10001

16                     Phone: (212) 714-1200

17                     E-mail: mschwartz@splaw.us

                        E-mail: blevenson@splaw.us

18

19                     Oren S. Giskan  (*Pro Hac Vice Pending*)

20                   GISKAN SOLOTAROFF & ANDERSON LLP

                        90 Broad Street, 10th Floor

21                     New York, New York 10004

22                     Phone: (212) 847-8315

                        E-mail: ogiskan@gslawny.com

23

24                     *Attorneys for Plaintiffs*

25

26

27

28

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND DEMAND FOR JURY TRIAL**